UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GREGORY NICHOLAS STESHENKO,

Plaintiff,

v.

THOMAS MCKAY, et al.,

Defendants.

Case No. 09-cv-05543-RS

**ORDER RE FURTHER SUBMISSION ON ISSUE OF CONTINUING *IN FORMA PAUPERIS* STATUS**

On April 14, 2015, an order was filed directing plaintiff to address the question of whether his in forma pauperis ("IFP") status should be continued on appeal. Plaintiff promptly filed a response containing various assertions. Although plaintiff has offered some explanation of the circumstances surrounding his original IFP application in this matter, certain questions remain. Accordingly, plaintiff will be given a further opportunity to address the issues as outlined below.

1. Initially, plaintiff asserts that the order to show cause "is a direct response" to the Rule 60(b) motions he filed in *Steshenko v. Gayard*, C 13-3400 LHK, and *Steshenko v. Albee*, C 13-4948 LHK,. Plaintiff is mistaken. First, nothing in plaintiff's motions in those actions (which are largely consistent with his previously-filed requests for reconsideration in any event) require a court response in this action. Second, as a factual matter, the order to show cause was completed and signed prior to 5:00 p.m. on April 13, 2015. Although it was not filed in ECF system until the following morning, it was executed prior to

plaintiffs' late night filing of his Rule 60(b) motions in the other actions. More fundamentally, the order to show cause issued as a response to plaintiff's request for a trial transcript to be prepared at public expense, and for the reasons stated in the order. While the judicial findings in plaintiff's other cases were relevant to the order as explained therein, the order was not a "response" to anything other than plaintiff's motion in this action and the factual circumstances described.

2.   Plaintiff further suggests that the order to show cause represents an attempt to preclude his appeal. Even putting aside plaintiff's wholly unfounded accusations of motive, nothing in the order to show cause threatens his right to appeal. In the event plaintiff's IFP status is revoked, it is true that he will not be entitled to a trial transcript at public expense. Even assuming he is then unable to pay for a transcript,[1] many if not all of the issues he has most strenuously argued he intends to present on appeal likely will not require a transcript. For example, the so-called "spoliation" issue does not implicate the transcript. Similarly, the claimed issues regarding jury instructions and the verdict form appear in the clerk's record, not the transcript. While there could be at least some arguments plaintiff may face challenges in presenting without a transcript, plainly he will not be precluded from presenting his central grounds for appeal even if his IFP status is revoked.

3.   Plaintiff also complains that the order to show cause charges him with perjury without giving him a chance to respond. To the contrary, the order to show cause issued specifically so that plaintiff would have the opportunity to address the very serious

---

[1] It is reasonable to infer that paying for a transcript may represent a significant hardship for plaintiff. At prior points in this action, however, plaintiff has argued that incurring certain expenses would be completely impossible for him, and yet managed to pay for them when given no other choice.

1  concerns outlined therein, prior to any negative consequences being imposed.

2  Additionally, by this order, plaintiff is being given yet a further opportunity to respond.

4  4. As noted in the order to show cause, it may be that the judicial findings of fact entered in the *Gayard* and *Albee* matters are binding against plaintiff at this juncture. Even assuming that is not so, however, plaintiff has not yet presented evidence or argument sufficient to conclude that response to item 5 of his IFP application was truthful. Plaintiff now argues that he executed a "transfer grant deed" three days prior to his IFP application, conveying the property to his mother. If the clear intent and effect of this transaction was to give his mother permanent title in fee simple to the property, in fair exchange for value already provided, then perhaps plaintiff's response on the IFP application a few days later could be deemed substantially accurate, notwithstanding the fact that he likely knew he remained owner of record. The record, however, does not support a conclusion that plaintiff intended such a transfer.

5. Plaintiff previously represented to the court in the *Gayard* and *Albee* matters that the "transfer" was made to his mother "as a surety for the family loan that she provided to him." *See*, *e.g.*, C13- 03400-LHK, Dkt. No. 77 at 2:14-15, and at 3:23-25 ("Under the penalty of perjury, Plaintiff certifies that all factual allegations stated in this brief are true and correct to the best of Plaintiff's knowledge.")

6. Although the deed contains language apparently granting plaintiff's mother an ownership interest in the property, it also states that the transaction is exempt from any documentary transfer tax because "This conveyance is to secure a debt, R & T 11921." The referenced provision of the California Revenue and Taxation Code applies to "instrument[s] in writing given to secure a debt," not to deeds conveying ownership.

7. Plaintiff has provided no information regarding the value of the property at the time of the alleged transfer, the equity therein, or the amount of money his mother had already loaned him or was agreeing to loan him in the future.  Plaintiff has not provided information as to whether he began paying rent to his mother or as to who made the mortgage payments on the house thereafter.  Under these circumstances, it is not presently reasonable to assume that the parties intended a complete transfer of ownership of the house from plaintiff to his mother, as opposed merely to giving her a security interest in it.

8. Plaintiff asserts he believed his mother would be recording the deed shortly after he executed it.  While it is plausible that he may have expected the deed to be recorded around the time he executed his IFP application in this action, when years later he submitted his IFP applications in *Gayard* and *Albee*, he presumably knew the deed had not been, and would not be, recorded.  Although misrepresentations on those applications do not retroactively render his application here false, this fact undermines the credibility of the contention that he failed to disclose his home ownership in this action because he believed the deed would be recorded shortly.

9. The *Gayard* and *Albee* decisions declined to reach a contention made by defendants therein that plaintiff also misrepresented his marital status.  The order to show cause here likewise did not address that issue.  Plaintiff's response, however, declares expressly under penalty of perjury that in the relevant time frame he had concerns that his "long-separated former spouse" might eventually "initiate[] the formal divorce."  He further asserts that he had appropriately disclosed his spouse on an earlier IFP application when he still "received material support from his spouse."  The clear implication of these statements is that plaintiff knowingly misrepresented his marital status when he checked "no" on item 3 of his IFP application.  Again, while plaintiff may have believed that his spouse's earnings were not relevant to his eligibility for IFP status, his obligation was to answer the

question completely truthfully, and then provide the additional information he wished to have considered. Accordingly, even assuming that plaintiff's separation from his spouse rendered her resources irrelevant, that would not excuse the apparent knowing misrepresentation of marital status.

Over the course of this litigation, plaintiff has repeatedly seized on any perceived discrepancies in statements made by counsel, parties, or witnesses to argue that lies and perjury have been pervasive. In many instances, the supposed contradictions appeared more likely to be the result of imprecise language or reasonable memory failure than of any intent to mislead. The argument plaintiff is making now as to why his IFP application should not be seen as outright false, or at a minimum, highly misleading, is one that he would have indignantly rejected if presented by the defendants. Even assuming plaintiff is ultimately able to establish that his IFP application was truthful or the result of innocent misunderstanding, there is more than adequate cause to describe it as apparently knowingly false on its face, under the very standards that he has attempted to apply to others. Plaintiff's ire is misplaced and his ongoing scurrilous accusations of a judicial campaign directed against him are utterly unfounded.

Within 10 days of the date of this order, plaintiff may file any further response, not to exceed 10 pages, to the issues set out above. Plaintiff may also address the question of whether continuing his IFP status would be appropriate notwithstanding any finding that his responses to item 5 and/or item 3 on the IFP application were knowingly false when made. Again, while defendants are not encouraged to do so, they may file a response, not to exceed 10 pages within 5 days of plaintiff's filing.

**IT IS SO ORDERED**.

Dated: April 15, 2015

_____
RICHARD SEEBORG
United States District Judge

CASE NO. 09-cv-05543-RS

5